**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**GEORGE DAVID ANGELICH,**

    **Plaintiff,**

      **v.**

                      **Civil Action No. 12-1508 (JEB)**

**MEDTRUST, LLC,**

    **Defendant.**

<u>**MEMORANDUM OPINION**</u>

Plaintiff George Angelich was a clinical psychologist with Defendant MedTrust, LLC, from 2009 until his dismissal in September 2011.  Although his Complaint is somewhat unclear, Plaintiff's employment appears to have been terminated following an official investigation of some kind, though he was never informed of its nature or results.  He thus brought this suit against MedTrust, alleging wrongful discharge, breach of contract, tortious interference with a business expectancy, defamation, and intentional infliction of emotional distress.  Defendant now moves to dismiss, asserting defects in personal and subject-matter jurisdiction, service of process, and venue.  Although a number of Defendant's procedural arguments are correct, because the interests of justice favor transfer rather than dismissal and because both parties appear to concede that venue and personal jurisdiction would be proper in the Eastern District of Virginia, the Court will transfer the case there.

I.      **Background**

According to the Complaint, which must be presumed true for purposes of this Motion, Angelich worked for MedTrust on a contract with the Department of Defense from October 2009

to September 2011.  See Compl., ¶¶ 1, 7.  MedTrust is a medical staffing company that provides

contract employees to commercial and governmental entities.  Id., ¶ 8.  Plaintiff was employed as

a clinical psychologist, serving at Fort Belvoir and Fort Myer, both of which are located in

Northern Virginia.  Id., ¶¶ 7-8.  While employed by MedTrust, he successfully applied for a

permanent position with the Department of Defense.  Id., ¶¶ 9-10.  The offer was later withdrawn

pending an official investigation, the nature and results of which Plaintiff was never made aware.

Id., ¶¶ 9-13.  MedTrust subsequently informed Plaintiff by e-mail that his employment would be

terminated on September 30, 2011.  Id., ¶ 16.

Plaintiff's description of the investigation's background is difficult to follow, but he

appears to believe that it concerned allegations that he had sexually harassed a coworker.  Id., ¶¶

17-27.  On September 13, 2012, Plaintiff brought this action against MedTrust, alleging five

common-law causes of action.  Id. at 1.  Defendant then filed the instant Motion to Dismiss

under Fed. R. Civ. P. 12(b), which the Court now considers.

## II.    Analysis

Defendant argues that Plaintiff's suit should be dismissed for lack of personal jurisdiction

(Fed. R. Civ. P. 12(b)(2)), subject-matter jurisdiction (12(b)(1)), appropriate service of process

(12(b)(5)), and venue (12(b)(3)).  In considering each argument, the Court must "treat the

complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences

that can be derived from the facts alleged.'"  Sparrow v. United Air Lines, Inc., 216 F.3d 1111,

1113 (D.C. Cir. 2000) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979))

(internal citation omitted); see also Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253

(D.C. Cir. 2005). The Court need not accept as true, however, "a legal conclusion couched as a

factual allegation," nor an inference unsupported by the facts set forth in the Complaint.

Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (citing Papasan v. Allain,

478 U.S. 265, 286 (1986)) (internal quotation marks omitted).

      While analysis of the threshold jurisdictional issues Defendant presents "necessarily

precedes a ruling on the merits, the same principle does not dictate a sequencing of jurisdictional

issues," which is committed to the sound discretion of the district court.  Ruhrgas AG v.

Marathon Oil Co., 526 U.S. 574, 584 (1999).  The Court, accordingly, will address Defendant's

arguments in the order in which they appear in its Motion, beginning with service of process and

then proceeding to discuss subject-matter jurisdiction, personal jurisdiction, and venue.

      A.  Service of Process

      Defendant first argues that Plaintiff's claim should be dismissed for insufficient service

of process under Fed. R. Civ. P. 12(b)(5).  See Mot. at 2.  Adequate service of process requires

"more than notice to the defendant," Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd., 484

U.S. 97, 108 (1987), and Plaintiff bears the burden of proving that Defendant was properly

served.  See Fed. R. Civ. P. 4(c)(1); Light v. Wolf, 816 F.2d 746, 751 (D.C. Cir. 1987).

      Rule 4(h)(1) allows a corporation to be served "in a manner authorized in the state where

the district court is located" or "in a manner authorized in the state where service [was] made."

Id.  Defendant asserts that "Plaintiff simply mailed the Summons and Complaint via certified

mail to 'MedTrust,'" a method of service it alleges was improper under the laws of both the

District of Columbia, where this Court is located, and Texas, where Defendant was served.  See

Mot. at 3-4.

      District of Columbia Rule 4(c)(3) allows a corporation to be served by "certified mail,

return receipt requested."  Id.  Process, however, must be served upon an "officer, a managing or

general agent, or any other agent authorized by appointment or by law to receive service of

process." D.C. Rule 4(h)(1).  Likewise, Tex. R. Civ. P. 106 allows a corporation to be served by

registered mail, but requires that service be addressed to a person authorized to accept service,

including the "president[,]… vice presidents[,] . . . and the registered agent of the corporation."

See Tex. Bus. Corp. Act art. 2.11(A).  Texas law further requires that service be made by

someone who is not "a party to or interested in the outcome of the suit."  See Tex. R. Civ. P. 103.

Under Texas law, the plaintiff's attorney is considered an interested party.  See, e.g., Coleman v.

Sentinel Transp., LLC, No. 09-1510, 2009 WL 3834438, at *3 (S.D. Tex. 2009) (holding

plaintiff's attorney was "a person 'interested in the outcome' of [the] suit, which makes service

ineffective under Texas law"); Jackson v. United States, 138 F.R.D. 83, 88 (S.D. Tex. 1991)

("Plaintiff's attorney is an agent of [Plaintiff and] . . . does possess an economic interest in the

outcome of the dispute," rendering him unable to serve process under Texas law) .

      Plaintiff does not contest that service here was improper under Texas law, but maintains

that it satisfied D.C. law.  See Opp., ¶¶ 9-11.  Plaintiff argues that because the "green card" (the

card attached to certified mail that is returned to the sender upon delivery) specified that delivery

was to be made to the "President of MedTrust," and because he paid for "restricted delivery"

(which ordinarily goes only to a specific addressee or authorized agent), he properly served

Defendant under D.C. law.  Id., ¶¶ 9-10.  Defendant disagrees, pointing out that the green card

merely serves as proof of delivery for the sender, and that the address on the envelope controls.

See Rep. at 2-3.  Defendant further notes that the Summons and Complaint were actually

delivered to a receptionist, who could not have been a person authorized to accept service under

D.C. Rule 4(h)(1).  Id.  MedTrust is correct.  Whether or not Plaintiff paid for proper service, it is

clear he did not obtain it.  The Court finds, accordingly, that Plaintiff has not properly served

Defendant by mail here because his mailing failed to address a specific party authorized to

receive service under either D.C. or Texas law and was sent by his attorney, who was ineligible to serve process under Texas law.

While a court has the authority to dismiss an action outright on the basis of insufficient service of process, "the court can, in its sound discretion, 'direct that service be effected within a specified time,'" quashing the defective service without dismissing the case. Wilson v. Prudential Financial, 332 F. Supp. 2d 83, 89 (D.D.C. 2004). "While the court does not look lightly on failure to comply with the notice requirements of Rule 4," id., choosing to quash service in lieu of dismissing the case is appropriate where "dismissing the plaintiff's case . . . would potentially subvert justice and unfairly prejudice the plaintiff, . . . [and the defendant would] not be prejudiced by affording the plaintiff the opportunity to comply with Rule 4." Candido v. District of Columbia, 242 F.R.D. 151, 164 (D.D.C. 2007); see also S.J. v. Issaquah School Dist. No. 411, 470 F.3d 1288, 1293 (9th Cir. 2006) ("the district court has discretion to dismiss an action or quash service" where service is insufficient); Marshall v. Warwick, 155 F.3d 1027, 1030 (8th Cir. 1998) (appellate court "review[s] for abuse of discretion the decision to dismiss the complaint" for insufficient service); Kreimerman v. Casa Veerkamp, S.A. de C.V., 22 F.3d 634, 645 (5th Cir. 1994) (same); Umbenhauer v. Woog, 969 F.2d 25, 30 (3d Cir. 1992) ("Upon determining that process has not been properly served on a defendant, district courts possess broad discretion to either dismiss plaintiff's complaint . . . or to simply quash service of process."). Dismissal is generally "inappropriate when there exists a reasonable prospect that service may yet be obtained." Umbenhauer, 969 F.2d at 30.

Here, where Defendant has actual notice of Plaintiff's claim, where there is a "reasonable prospect that service may yet be obtained," and where no prejudice would inure to Defendant from quashing service, the Court sees no reason to dismiss the case. While Plaintiff has failed to

properly serve Defendant, his errors were minor in nature, and "[i]t is too late in the day and

entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits

to be avoided on the basis of such [a] mere technicalit[y]. 'The federal rules reject the approach

that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome

and accept the principle that the purpose of pleading is to facilitate a proper decision on the

merits.'" Foman v. Davis, 371 U.S. 178, 181-82 (1967) (quoting Conley v. Gibson, 355 U.S. 41,

48 (1957)). The Court will, therefore, quash Plaintiff's prior service and order that service be

properly effected by January 18, 2013.

> B. Subject-Matter Jurisdiction

Defendant next argues that even if service may be cured, Plaintiff's case must be

dismissed under Fed. R. Civ. P. 12(b)(1) because this Court lacks subject-matter jurisdiction.

See Mot. at 7. Plaintiff bears the burden of proving that the Court has such jurisdiction. See

Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992); U.S. Ecology, Inc. v. U.S. Dep't of

Interior, 231 F.3d 20, 24 (D.C. Cir. 2000). A court has an "affirmative obligation to ensure that

it is acting within the scope of its jurisdictional authority." Grand Lodge of Fraternal Order of

Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). For this reason, "'the [p]laintiff's

factual allegations in the complaint . . . will bear close[] scrutiny." Id. at 13-14 (quoting 5A

Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (2d ed. 1987)).

Federal district courts have original jurisdiction over, *inter alia*, claims between citizens

of different states where the matter in controversy exceeds $75,000. See 28 U.S.C. § 1332(a).

Defendant argues that Angelich has not satisfied this monetary requirement. See Mot. at 7.

While Plaintiff's descriptions of his damages could undoubtedly have been clearer – and the

Court trusts that they will be in the future – Plaintiff still satisfies the amount-in-controversy

requirement of § 1332(a).  At the very least, if Plaintiff's allegations regarding tortious

interference with his business expectancy were believed, he would likely be entitled to his

expected salary as a full-time clinical psychologist with the Department of Defense.  Plaintiff

alleges that this salary alone exceeds $75,000, and the Court must accept this as true for purposes

of Defendant's Motion.  This amount, in addition to whatever additional damages Plaintiff may

have incurred in conjunction with his other claims, is sufficient to satisfy the amount-in-

controversy requirement.  Because Plaintiff can show complete diversity and an amount in

controversy greater than $75,000, this Court does have subject-matter jurisdiction and will deny

Defendant's 12(b)(1) challenge.

      C.  <u>Personal Jurisdiction and Venue</u>

      Defendant also asserts that it is not subject to this Court's personal jurisdiction and that

venue does not lie in this District, so dismissal or transfer to the Eastern District of Virginia is

proper under Rules 12(b)(2) and 12(b)(3).  <u>See</u> Mot. at 12-17.  To this Court, both personal

jurisdiction and venue appear to be close questions.  Even if venue was proper and personal

jurisdiction existed in this District, however, transfer would still be within this Court's discretion

under 28 U.S.C. § 1404(a).  Defendant rightly concedes that both venue and personal jurisdiction

would lie in the Eastern District of Virginia, <u>see</u> Mot. at 17, and Plaintiff does not appear to

contest transfer there.  The Court, then, will take the litigants at their word: assuming but not

deciding that venue and personal jurisdiction are proper in this District, the Court nonetheless

agrees that transfer to the Eastern District of Virginia is in the interests of justice and

convenience and is thus appropriate under § 1404(a).

      Transfer from an improper venue is available under a separate venue statute, 28 U.S.C. §

1406(a), "whether the court in which it was filed had personal jurisdiction over the defendants or

not . . . in accord with the general purpose . . . of removing whatever obstacles may impede an expeditious and orderly adjudication of cases and controversies on their merits." Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466-67 (1962). Other courts have routinely applied the Goldlawr framework to permit transfers under § 1404(a) as well without regard to personal jurisdiction and venue. See Naartex Consulting Corp. v. Watt, 722 F.2d 779, 789 (D.C. Cir. 1983) ("A court may transfer a case to another district even though it lacks personal jurisdiction over the defendants.") (citing Goldlawr, 369 U.S. at 466-67); Corke v. Sameiet M.S. Song of Norway, 572 F.2d 77, 80 (2d Cir. 1978) ("the court has power [under § 1404(a)] to transfer the case even if there is no personal jurisdiction over the defendants, and whether or not venue is proper . . . if a transfer would be in the interest of justice") (internal quotation marks omitted). In a similar situation involving *forum non conveniens*, the Supreme Court has held that "where subject-matter or personal jurisdiction is difficult to determine, and *forum non conveniens* considerations weigh heavily in favor of [transfer], the court properly takes the less burdensome course." Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp., 549 U.S. 422, 436 (2007).

Transfer under § 1404(a) is proper where the plaintiff could have originally brought the case in the transferee district, and "the convenience of parties and witnesses [and] the interests of justice" favor transfer. See 28 U.S.C. § 1404(a). Such decisions are committed to the sound discretion of the district court. See Stewart Org., Inc., v. Ricoh Corp., 487 U.S. 22, 29 (1988). Defendant concedes that venue and personal jurisdiction are proper in the Eastern District of Virginia, clearing the first statutory hurdle, and it lists a number of factors suggesting that it would indeed be in the interests of convenience and justice to have the case heard there. See Mot. at 16-17. For example, Defendant notes that "the operative allegations in this lawsuit occurred in Virginia," and "Plaintiff was hired by MedTrust to work at Fort Belvoir, located in

Fairfax County, Virginia . . . [and] only worked at either Fort Belvoir or Fort Myer, located in Arlington County, Virginia."  Id.  Defendant likewise observes that the permanent position with the Department of Defense – the very business expectancy with which Plaintiff alleges MedTrust interfered – was to be located in Virginia.  Id.  Defendant further points out that "all of the witnesses and evidence will be located in Virginia," "the expense of trying a case in the District of Columbia . . . may be substantial," and "the inconvenience to Plaintiff is small, given that he worked [in] and commuted to Virginia daily and desired to continue working there."  Id.  Finally, Virginia law will govern all of Plaintiff's claims.  Id.  Plaintiff does not take issue with any of these assertions, suggesting he consents to such a transfer.  See Opp., ¶ 33.

"Generally, the interest of justice requires transferring such [a case] to the appropriate judicial district, rather than dismissing [it]."  Williams v. GEICO Corp., 792 F. Supp. 2d 58, 64 (D.D.C. 2011) (citing Goldlawr, 369 U.S. at 466-67).  "Given the presumption in favor of transfer over dismissal," where all of the relevant events and witnesses are and were located in Virginia and Virginia law will govern the action, the Court concludes that the interests of justice do indeed require transfer.  Id.   That both parties appear to consent to such transfer suggests that considerations of convenience favor transfer as well.  The Court, therefore, will order that this case be transferred to the Eastern District of Virginia, where both parties concede that personal jurisdiction and venue will be proper.

**III.     Conclusion**

For the foregoing reasons, the Court will issue an Order consistent with this Opinion this day, granting in part and denying in part Defendant's Motion, and transferring this case to the Eastern District of Virginia.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  December 19, 2012